UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:20-cr-286-CEH-AAS

PAUL STEPHENSON
_____/

**ORDER**

This matter comes before the Court upon Defendant's Amended Motion *In Limine* #13 Regarding YouTube Videos [Doc. 110], the United States' Response in Opposition[1] [Doc. 99], the Notice of Supplemental Authorities in Opposition to Defendant's Motion In Limine #13 [Doc. 124], and the arguments of counsel at the hearing held on June 24, 2021. Having considered the arguments presented and having reviewed the YouTube videos and lyrics, the Court will **GRANT** Defendant's Amended Motion *In Limine* #13 Regarding YouTube Videos.

**I.   BACKGROUND**

On or about July 6, 2020, law enforcement observed Defendant Paul Stephenson commit traffic violations while driving. When the officer attempted a stop of Defendant's vehicle, Defendant fled. Eventually, the officer was able to conduct a felony traffic stop. During Defendant's arrest, the officer observed a pistol on the driver's floorboard. A search incident to the arrest was conducted, and the officers also

---

[1] The United States did not file an amended response and relied on its response directed to the original motion.

discovered a black cloth bag containing $19,785.00 and a clear bag containing 429.68 grams of suspected marijuana. On September 22, 2020, the United States filed an indictment, which charges that on or about July 6, 2020, Defendant knowingly and intentionally possessed with intent to distribute, a controlled substance involving a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (**Count I**), and knowingly possessed a firearm in furtherance of a violation of 841(a)(1) (**Count II**). [Doc. 1 at pp 1-2].

*The Videos/Lyrics*

On May 11, 2021, the United States notified Defendant of its intent to admit into evidence at trial, three publicly available YouTube music videos in which Defendant purportedly raps about his drug activities, as well as transcripts of those videos' lyrics. [Docs. 97, 99].[2] In those videos, Defendant raps under the name "BOC FREDO." The first video, titled "TRAPALOT," was published on January 21, 2019.[3] The second video, published on September 8, 2019, is titled "SIDEWALK NI***,"[4] and presents Defendant rapping as a featured performer alongside another rapper who performs under the name "BOC GOOLIE." The third video, "TOP SHOTTAZ," was published the same date as the traffic stop, seizures, and arrest at issue in this case,

---

[2] To the extent the YouTube music videos constitute Rule 404(b) evidence, the United States did not give timely notice of its intent to use these videos. The United States was required to disclose to Defendant such evidence by October 23, 2020. *See* Doc. 18, p. 4. The videos were disclosed to defense counsel on May 11, 2021, one day before the trial was scheduled to commence. The Court continued the trial to August 2, 2021. *See* Doc. 107.

[3] This video is available at https://www.youtube.com/watch?v=_8KDyrihYeQ.

[4] Asterisks are used in place of some of the letters as the word is a racial slur. The video is available at https://www.youtube.com/watch?v=128hwsOzS3w.

July 6, 2020.[5] In that video, Defendant performs alongside another rapper named "B9."

*The Motion in Limine*

Defendant immediately moved to exclude these videos as irrelevant and inadmissible. [Doc. 99]. On July 8, 2021, Defendant filed an amended motion *in limine*, raising additional arguments for exclusion of the rap videos. [Doc. 110]. First, Defendant argues that the rap songs are inadmissible hearsay pursuant to Federal Rules of Evidence 801 and 802. *Id.* at pp. 2-4. In fact, Defendant contends that the videos are fictional and a musical art form and are not meant to be interpreted literally. *Id.* at pp. 2-3. Next, Defendant argues that the videos will bring inadmissible bad character propensity evidence or gang association evidence through a backdoor into the trial and, therefore, it is inadmissible pursuant to Rule 404. *Id.* at pp. 5-10. Thirdly, Defendant argues that the videos should be excluded as unfairly prejudicial pursuant to Rule 403, because they include gratuitous profanity, refer to women in derogatory terms, and include references to violence. *Id.* at pp. 11-21. As an alternative, Defendant seeks exclusion of certain portions of the lyrics in the event the Court finds the videos are admissible. *Id.* at pp. 21-33.

Responding to the original motion *in limine*, the United States argues that the lyrics were Defendant's own words and thus admissible under Rule 801(d)(2)(A) as statements of an opposing party. [Doc. 99at p. 1]. The United States also argues that

---

[5] This video is available at https://www.youtube.com/watch?v=JkuDRi8yHd4.

the three YouTube videos are relevant because they have a tendency to prove facts of consequence, including that:

> the defendant knew that the 429.68 grams of marijuana were in the bag in his car; (2) the defendant constructively possessed that marijuana; (3) he intended to distribute that marijuana; ([4]) the $19,785 in cash found in the same bag as the marijuana represented proceeds of drug sales or money intended to be used to purchase additional supply and thus facilitate narcotics trafficking; and (4) the defendant possessed the gun for the purpose of furthering his narcotics trafficking.

*Id.* at p. 7. The United States further argues that the videos are highly probative, on-topic, and important to the proof of Defendant's participation in criminal activity and that this case is far more similar to ones in which the admission of videos has been upheld. *Id.* at pp. 8-9. At the hearing, the United States argued that the recency or remoteness of the videos is irrelevant.

## II.    LEGAL STANDARD

"The term 'motion in limine' generally refers to a motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.' " *United States v. Fernetus*, 838 F. App'x 426, 432 (11th Cir. 2020) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). "The starting place for evidentiary admissibility is relevance." *United States v. McGregor*, 960 F.3d 1319, 1323 (11th Cir. 2020). "District courts may admit relevant evidence, which is evidence that 'has *any* tendency to make a fact [of consequence in determining the action] more or less probable than it would be without

the evidence.' " *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (quoting Fed. R. Evid. 401). Irrelevant evidence is not admissible. *McGregor*, 960 F.3d at 1324.

Evidence must also meet the requirements of Rule 403 and, to the extent necessary, Rule 404. Pursuant to Rule 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Importantly, "Rule 403 'is an extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed.' " *McGregor*, 960 F.3d at 1324 (quoting *United States v. Cross*, 928 F.2d 1030, 1051 (11th Cir. 1991)). "Rule 404 prohibits the government from introducing evidence of a prior crime or wrongful act to prove the defendant's bad character and show that he acted in conformance with that character." *United States v. Clotaire*, 963 F.3d 1288, 1299 (11th Cir. 2020) (citing Fed. R. Evid. 404(b)(1)), *cert. denied*, 141 S. Ct. 1743 (2021). The rule is "one of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity." *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (quoting *United States v. Stephens,* 365 F.3d 967, 975 (11th Cir.2004)). It is the province of the trial judge to weigh any materiality or relevance against any prejudice. *United States v. Shelley*, 405 F.3d 1195, 1201 (11th Cir. 2005). The trial judge has wide discretion in doing so, *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005),

and unless the judge's reading is "off the scale," his discretion is not abused, *Shelley*, 405 F.3d at 1201.

## III.   DISCUSSION

As an initial matter, the Court notes that the videos each contain both oral assertions and physical depictions. *See* Fed. R. Evid. 801(a) (defining statement as including a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion). However, both the written submissions and oral arguments have focused almost exclusively on the lyrics, many of which cannot be understood because of the slang terms used, but which purportedly describe drug related activities.[6] The songs employ the use of profane, offensive, and racially insensitive words and violent and sexual imagery. While the parties have not specifically addressed the physical depictions, the Court cannot ignore the portrayals in the video, including Defendant and others handling what appear to be firearms, marijuana, and large amounts of cash. In determining whether to exclude the YouTube videos, the Court will assess whether the statements contained therein are inadmissible out-of-court statements, and if not, whether they are relevant, followed by a balancing of the probative value and the prejudice.

---

[6] Discrepancies exist regarding the interpretation and transcription of the lyrics used in the videos.  The United States has produced at least two transcriptions of the lyrics which differ from Defendant's assertions as to what is being said in the lyrics.  For example, in SIDEWALK N***A, the United States contends that the lyrics are "loyal to the sword." Defendant contends that the lyrics are "loyal to the soil." And, for example, there is a discrepancy as to what is meant by "Black Chyna."

*Admissibility of Out-of-Court Statements*

The United States offers the three YouTube videos as statements offered against an opposing party pursuant to Rule 801(d)(2)(A). According to Rule 801(d)(2)(A), a statement is not hearsay if it is offered against an opposing party and was made by the party in an individual or representative capacity. Fed. R. Evid. 801(d)(2)(A); *United States v. Santos*, 947 F.3d 711, 723 (11th Cir. 2020) (stating same). All three videos contain statements made by Defendant and are being offered against him in order to prove various elements of the offenses. Defendant's statements, to the extent they are understood, in the YouTube videos would qualify as non-hearsay statements. *See United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) (finding that statements made by Defendant, as testified to by a government witness, were clearly admissible as admissions by a party opponent); *United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir. 1985) (holding that the district judge properly allowed Defendant's statement to be introduced as a non-hearsay admission by a party opponent). However, Rule 801(d)(2)(A) does not allow for admission of those portions of the videos which contain statements that were not made by Defendant, of which there are several.

*Relevance of Statements*

Having found that Defendant's statements are not hearsay, the Court now turns to their relevance. In making this determination, the Court must consider whether the statements have any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. The United States submits that the videos have a tendency to prove facts

that are of consequence, and as the Court understands it, relate primarily to Defendant's knowledge, intent, and possession, which are all material to criminal liability in this case. To the contrary, Defendant argues that the videos are relevant only to establish propensity to sell drugs and bad character, which Rule 404 prohibits. [Doc. 110 at pp. 5-10]. Defendant further argues that the two first videos—created at a bare minimum of 10-18 months prior to the charged offense—are too remote to be relevant. *Id.* at p. 8.

According to the United States, Defendant raps about how he makes money dealing drugs in the "TRAPALOT" video. In the video titled "SIDEWALK NI***," Defendant purportedly brags about his narcotics trafficking activity and also threatens the use of violence to protect his drug turf. In "TOP SHOTTAZ," Defendant raps about his success in trafficking narcotics as well as his possession of a firearm. Therefore, the United States contends that the statements made by Defendant in these videos are probative as to Defendant's knowledge, possession, and his intent. The Court agrees with the United States that the statements made by Defendant in the videos have probative value, as they tend to make it more probable that Defendant knew he was in possession of marijuana, proceeds of his dealings in marijuana, and a firearm intended for use in his dealings on July 6, 2020.

However, a concern with this argument is that it is unknown when the videos were produced. All that is known is that "TRAPALOT" was uploaded to YouTube on January 21, 2019, almost eighteen months prior to the charged offense. "SIDEWALK N***A" was uploaded to YouTube on September 8, 2019,

approximately ten months prior to the charged offense.  "TOP SHOTTAZ" was uploaded to YouTube on July 6, 2020, the day of the charged offense.  In none of the videos does Defendant admit to the charged offenses.  If the United States' interpretation of the videos is correct, Defendant raps about his past drug dealings, trafficking in narcotics and possessing a firearm.

The remoteness of the first video, published eighteen months prior to the date of the offense, diminishes its probative value and the remoteness of the second video, published ten months before the offense, reduces its probative value. A court, in its discretion, may exclude relevant and material evidence if it is too remote in time from the issues at trial. *Thigpen v. Thigpen*, 926 F. 2d 1003, 1013 (11th Cir. 1991). Temporal remoteness is an important factor to be considered as it depreciates the probity of the extrinsic offense. *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005). Because decisions as to impermissible remoteness are so fact-specific, there is no generally applicable litmus test. *Id.* (quoting *United States v. Pollock,* 926 F.2d 1044, 1048 (11th Cir.1991)). "When the admission of extrinsic act evidence is challenged on the grounds of remoteness the relevant inquiry is whether the other acts have 'clear probative value with respect to the intent of the accused *at the time of the offense charged*.' " *United States v. Scott*, 701 F.2d 1340, 1345–46 (11th Cir. 1983) (quoting *United States v. San Martin,* 505 F.2d 918 (5th Cir.1974)). The Court cannot say that the first video is probative as to Defendant's knowledge, possession, and intent at the time of the charged offense and the Court seriously questions the value of the second video. In fact, there is absolutely no evidence before the Court as to when the lyrics were actually

9

written, the songs recorded, or the videos filmed and edited. As such, the Court finds the statements in the first video too remote to be of much probative value and that the statements in the second video are of dubious probative value based on the lapse in time.

*Weighing Probative Value and Prejudice*

Moreover, the Court finds that the likely prejudice to Defendant from admitting these statements greatly outweigh any probative value. Again, the lyrics purportedly depict drug related activities and incorporate profane, offensive, and racially insensitive words and violent and sexual imagery. The first and second videos both specifically reference the BOC OMN gang with which Defendant is purportedly affiliated. The Court has previously ruled such evidence highly prejudicial and inadmissible at the trial of this case. [Doc. 93, pp. 7-10]. Additionally, the first video shows Defendant handling a large amount of cash and in possession of a firearm; the second video also shows him handling a large amount of cash; and the third video shows him in possession of and handling various firearms. These lyrics and depictions of Defendant create a significant risk that the jury will view him as a violent drug dealer and gang member and find him guilty of the charged offenses for improper reasons. The evidence that is directly relevant to this case pales in comparison to the YouTube videos the United States seeks to present.  The YouTube videos will overshadow the acts giving rise to the charges here.  For example, the parties have each identified expert witnesses they intend to call in this case if the videos are admitted in evidence: Defendant, Professor Charis Kubrin, who will provide background information about

10

rap music and discuss the genre's artistic conventions, *see* doc. 127; United States, federal inmate Devante Moreno Smith, who will interpret the lyrics and images in the videos, *see* doc. 131.  This presents a great risk of jurors having difficulty separating the issues and according the limited weight to the videos.  In essence, the YouTube videos will become a feature of the trial.  The likely curative effect of any limiting instruction will be minimal at best.

The United States has presented the Court with citations to legal authority from this Circuit and other courts across the country, where rap videos have been admitted, in spite of some prejudice to Defendant.  "[V]irtually all evidence presented against a criminal defendant can be considered prejudicial." *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009).  Hence, it is the danger that unfair prejudice will substantially outweigh the probative value of the evidence that warrants its exclusion. *Id.* The Court is not swayed by any of the cited cases that the probative value of the videos to the charged offenses in this case outweighs the unfairly prejudicial effect.  The cited cases are factually distinguishable,[7] simply involved evidence that was more

---

[7] *United States v. Graham*, 293 F. Supp. 3d 732, 734-735 (E.D. Mich. 2017) (finding that while rap videos contained profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is 'more inflammatory' than the charged crimes—violent murders, narcotics trafficking, weapons possession, and other criminal activity by the alleged enterprise—where indictment charged defendants as members of a narcotics trafficking enterprise that was heavily involved in the YouTube Rap Video scene, and whose videos allegedly detailed and boasted about their criminal activities).

probative that prejudicial,[8] addressed the court's discretionary authority in ruling on such issues,[9] or plainly do no lend much support, if any, to the claim for admission[10].

---

[8] *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (holding that defendant's rap video which glorified violence had significant probative value for the decision of contested issues, including defendant's identity and whether he brandished a gun when he committed the crimes, which was not substantially outweighed by the potential for unfair prejudice); *United States v. Haight*, 892 F.3d 1271, 1278 (D.C. Cir. 2018) (noting that "the District Court did not abuse its discretion in concluding that the probative value of the writings outweighed any danger of unfair prejudice:), abrogated on other grounds by *Borden v. United States*, No. 19-5410, 2021 WL 2367312 (U.S. June 10, 2021); *United States v. Pierce*, 785 F.3d 832, 836-841 (2d Cir. 2015) (introduction of rap video from one of the defendants' Facebook page helped establish the defendant's association with members of a violent street gang and his motive to participate in the charged conduct—conspiracy, racketeering, murder, narcotics trafficking, and firearms offenses—and the probative value was not outweighed by the danger of unfair prejudice); *United States v. Stuckey*, 253 F. App'x 468, 483 (6th Cir. 2007) (finding that "[g]iven the higher probative value of [the defendant's] rap lyrics, the district court did not abuse its discretion by holding that the danger of unfair prejudice did not substantially outweigh the lyrics' probative value" and noting that Rap is no longer an underground phenomenon and is a mainstream music genre and reasonable jurors would be unlikely to reason that a rapper is violent simply because he raps about violence); *United States v. Carpenter*, 372 F. Supp. 3d 74, 78 (E.D.N.Y. 2019) (finding that while the videos and lyrics sought to be admitted undoubtedly contained profanity, misogyny, and other references that many individuals might find objectionable, their content was not "more inflammatory" than the crimes charged in the superseding indictment—conspiring to distribute heroin and cocaine base and weapons possession); *United States v. Dore*, No. 12 CR 45 RJS, 2013 WL 3965281, at *1 (S.D.N.Y. July 31, 2013) (music video depicting two of the defendants and a third, unindicted individual acting out an armed robbery was admissible to show the defendant's intent, plan, knowledge and identity; was probative of the relationship between defendants and of the conspiracy; and was not unduly prejudicial); *United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (noting merely that the district court balanced the risk of prejudice from the profanity and offensive conduct in the rap videos—used to establish the existence of and the defendant's participation in, the alleged RICO enterprise—against their probative value in concluding that Rule 403 did not bar their admission into evidence).

[9] *United States v. Miller*, 638 F. App'x 543, 545 (8th Cir. 2016) (noting that great deference is given to a district court's application of the Rule 403 balancing test and that the district court balanced the interests at stake and determined the value of the relevant evidence outweighed the prejudice to the defendant); *United States v. Foster*, 939 F.2d 445, 457 (7th Cir. 1991) (reasoning that admission of rap verse—"Key for Key, Pound for pound I'm the biggest Dope Dealer and I serve all over town"—was not to show that defendant was, in fact, "the biggest dope dealer" but to show he had some knowledge of narcotics trafficking, and in particular drug code words and that the district court is uniquely suited to the task of assessing the

The determination as to whether the probative value of evidence is substantially outweighed by its prejudicial impact "lies within the sound discretion of the district judge and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Jernigan,* 341 F.3d 1273, 1282 (11th Cir. 2003) (quotations omitted). The jurisprudence of this Circuit with regards to the admission of rap music or lyrics reflects that some cases will require the exclusion of offensive lyrics while others will allow for admission. *Compare United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011)

---

relative impact of the inferences that may be drawn from the verse, and any accompanying potential for unfair prejudice).

[10] *United States v. Ragland*, 434 F. App'x 863, 871 (11th Cir. 2011) (finding that the court abused its discretion under Rule 403 in admitting at the defendant's trial—for perpetrating or attempting to perpetrate armed convenience store robberies—a partial music video taken from his MySpace page in which he referred to his involvement in a separate armed robbery in Pennsylvania); *United States v. Moore*, 639 F.3d 443, 448 (8th Cir. 2011) (holding that admission of lyrics that tended to show Defendant knew cocaine prices, used drug code words, and sold drugs to supplement his income but which presented a danger of unfair prejudice—as they were replete with vulgar, inflammatory, prejudicial language, most of which was irrelevant to whether Defendant was involved in a drug distribution conspiracy—did not amount to plain error as there was no Rule 403 objection and the evidence against Defendant was overwhelming); *United States v. Price*, 418 F.3d 771, 783 (7th Cir. 2005) (noting that while the lyrics were possibly of some help to the jury in assessing the evidence, their possible prejudicial value gave reason for pause, and concluding that any error that resulted from admission was harmless because it was made clear at trial that the authorship of the song was unknown and it was not attributed to any of the defendants); *United States v. Williams*, 203 F. App'x 976 (11th Cir. 2006) (noting that the defendants challenged the admission at trial of rap music and lyrics which graphically and explicitly portrayed their gang, Diablos, as an Atlanta-based gang that sold drugs and robbed drug dealers of money and drugs, but providing no further analysis).

(excluding rap video in prosecution for offenses related to drug conspiracy and money laundering where lyrics presented a substantial danger of unfair prejudice because they contained violence, profanity, sex, promiscuity, and misogyny and could reasonably be understood as promoting a violent and unlawful lifestyle and the video was not clearly probative of the defendant's guilt) *with United States v. Belfast*, 611 F.3d 783, 820 (11th Cir. 2010) (admitting violent rap lyrics as more probative than prejudicial in prosecution for crimes related to torture, where lyrics provided evidence of facts relevant to the indictment's allegations and contradicted defendant's exculpatory post arrests statements). Having reviewed the lyrics and depictions in the videos and having considered their relevance to the charged offenses, the Court finds that the risk that the jury will render a conviction based on the rap lyrics and depictions in the YouTube videos, rather than what the United States has proven is far greater than the probative value of this evidence in establishing Defendant's knowledge, possession, and intent. Therefore, the Court finds that exclusion is warranted.

## IV.    CONCLUSION

In sum, the first video is too remote to be of much probative value in this case and the graphic lyrics and depictions of all three videos render them more prejudicial than probative on any material issue. As a result, the Court finds that exclusion of the three YouTube videos is warranted.

Accordingly, it is hereby **ORDERED**:

1. Defendant's Amended Motion In Limine #13 Regarding YouTube Videos [Doc. 110] is **GRANTED**. The three YouTube videos are excluded as evidence in this case.

**DONE AND ORDERED** in Tampa, Florida on July 23, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any